## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **SYLVIA E. CRANE,** | } | |
| Plaintiff, | | |
| | } | |
| vs. | } | **CIVIL ACTION NO.** |
| | | |
| **MEGAN J. BRENNAN,** | } | |
| **POSTMASTER GENERAL,** | | |
| **UNITED STATES POSTAL** | } | |
| **SERVICE,** | | |
| Defendant. | } | |

## COMPLAINT

### I. JURISDICTION AND VENUE

1. This is a suit for relief from disability discrimination and retaliation instituted by Plaintiff pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq., as amended by the ADA Amendments Act of 2008, Pub. L. No. 110-325, § 4(a), 122 Stat. 3555 (2009), hereinafter "ADA".

2. The jurisdiction of this Court over these claims is based on Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., and 28 U.S.C. §§1331 and 1343.

3. Sylvia E. Crane ("Plaintiff") timely filed her several charges of disability discrimination and retaliation against defendant Megan J. Brennan, Postmaster

General, United States Postal Service ("Defendant" or "the Agency"), with the Equal Employment Opportunity Commission ("EEOC").

4.  On January 29, 2020, in Appeal No. 2019003484, Hearing No. 420-15-00094X, Agency No. 4G-350-0083-14, the EEOC affirmed judgment in favor of the Agency on that claim, hereinafter referred to as "Claim A".

5.  On March 11, 2020, in EEOC Case No. 420-2019-00295X, Agency Case No. 4G-350-0146-18, the Administrative Judge entered judgment in favor of the Agency, and the Agency gave Notice Of Final Action on March 26, 2020, on that claim, hereinafter referred to as "Claim B".

6.  On March 11, 2020, after Plaintiff withdrew her request for hearing, and the Agency gave Notice Of Final Action on March 26, 2020, in Agency Case No. 4G-350-0108-19, on that claim, hereinafter referred to as "Claim C".

7.  Claims A, B and C, each and all involved similar and related claims of discrimination by Plaintiff, similar and related facts and circumstances, and shared witnesses.

8.  Plaintiff has timely filed this suit within 90 days of each of those adverse decisions, and her claims are consolidated herein.

9. Venue is proper in the Northern District of Alabama pursuant to 28 U.S.C. §1391(e), because the unlawful practices alleged in this complaint occurred

in the Northern District of Alabama.

## II.  PARTIES

10.  Plaintiff is a citizen of the United States over the age of nineteen years and a resident of DeKalb County, Alabama.

11.  Defendant is an employer as that term is contemplated under Title VII. Defendant operated offices of the Agency in this judicial district during all times pertinent to this complaint.

## III.  FACTS

12.  At the time of all events giving rise to this complaint, Plaintiff worked as a Sales Service Distribution Clerk at the Agency's Fort Payne, Alabama Post Office.

13. Plaintiff had worked for years with the Defendant as a Sales Service Distribution Clerk, and she had received an associate supervisory candidate evaluation with the highest marks in 2006. In 2015 she received a Commitment To Service in recognition of her Quarter 1 FY 2015, 100% Perfect Transaction. She was a qualified individual for purposes of the ADA..

14. Plaintiff had anxiety and depression, urinary and bowel incontinence issues, a/k/a urinary urgency-overactive bladder, which were worsened by stress, which caused her to need to go to the bathroom more frequently on short notice.

Because this substantially limits at lease one of her major life activities, for purposes of the ADA she had a disability.

15. The Plaintiff on numerous occasions sought a reasonable accommodation for her disability under the ADA by submitting statements to her supervisory managers from several doctors that she needed to be allowed to go to the restroom frequently and on short notice. Those supervisory managers were her postmaster at the applicable time, most often Mary Jo Crabtree, and her direct supervisor, Judy Ling.

16. On or about June 10, 2008, Plaintiff obtained a statement from Dr. Jerry D. Pierce, stating that she should be allowed to go to the bathroom at her convenience due to an urgency problem as per her gynecologist. On or shortly after that date, she provided it to her job supervisor, Judy Ling, and her postmaster.

17. Plaintiff thereby requested a reasonable accommodation by her employer to allow her to continue to do her job.

18. On information and belief this request was not documented, and this request for a reasonable accommodation was not processed.

19. On or about April 14, 2010, Plaintiff obtained a statement from her gynecologist, Dr. Jerry D. Pierce, asking that she be allowed to go to the bathroom

at her convenience, and stating that she had a urgency problem as per her gynecologist. On or shortly after that date, she provided it to her supervisory management.

20. Plaintiff thereby requested a reasonable accommodation by her employer to allow her to continue to do her job.

21. On information and belief this request was not documented, and this request for a reasonable accommodation was not processed.

22. On or about July 7, 2010, Plaintiff obtained a statement from Dr. Ronnie Lewis, stating that she had urinary frequency, which required multiple bathroom breaks. On or shortly after that date, she provided it to her supervisory management.

23. Plaintiff thereby requested a reasonable accommodation by her employer to allow her to continue to do her job.

24. On information and belief this request was not documented, and this request for a reasonable accommodation was not processed.

25. On or about July 15, 2010, Plaintiff obtained a statement from Dr. Gorman, asking that she be allowed to go to the bathroom as needed. On or shortly after that date, she provided it to her supervisory management.

26. Plaintiff thereby requested a reasonable accommodation by her

employer to allow her to continue to do her job.

27. On information and belief this request was not documented, and this request for a reasonable accommodation was not processed.

28. Plaintiff was never asked for any additional information as to any of those requests for accommodation, and she was never notified of any action on her requests for a reasonable accommodation.

29. Rather than grant her requests, Plaintiff's supervisory management ignored her requests, and told her anytime she needed to go to the bathroom, she now had to come personally to them first and advise them. No other employee was required to do that. Plaintiff worked at a relatively small area, and so it became public knowledge every day when she had to request time to go to the bathroom, unlike any other employee.

30. Because of this Plaintiff was always delayed in being able to go to the restroom, and on occasion that caused her to urinate on herself on her job meeting the public before she could get to the restroom.

31. Rather than a reasonable accommodation, Plaintiff's supervisory management made her disability worsen and her suffering from it more onerous, by using their power over her to daily abuse, harass and intimidate her about it.

32. On April 14, 2014, and on numerous other occasions, after advising one

of her supervisors as they required, Plaintiff would then be followed into the rest room and/or the break room, to be given work instructions by one of them, most often Mary Jo Crabtree or Judy Ling. Sometimes this occurred even as she was in the bathroom dealing with her urinary urgency, and this only worsened her disability and her suffering.

33. As a part of that discriminatory harassment and retaliation, including June 11, 2014, and on numerous occasions thereafter, Plaintiff was yelled at, and spoken to with harsh attitudes, tones and words by her supervisory management, when she would try to take rest room breaks needed for her urinary urgency. And this only worsened her disability and her suffering.

34. On or about July 15, 2014, Plaintiff filed a step 2 grievance, attaching copies of the said medical statements, about being followed into the rest room and given instructions in there.

35. On or about July 17, 2014, Plaintiff filed Claim A for disability discrimination and retaliation, inter alia.

36. As a part of that discrimination, discriminatory harassment and retaliation, and on or about October 8, 2014, Plaintiff was wrongly issued a letter of warning.

37. On or about October 16, 2015, Plaintiff obtained a statement from

CRNP Dedre Capps, stating she was a patient at Family First Medicine, and would need to be able to eat snacks every 2 hours and use the bathroom more frequently due to medical conditions. On or shortly after that date, she provided it to her supervisory management.

38. Plaintiff thereby requested a reasonable accommodation by her employer to allow her to continue to do her job.

39. On information and belief this request was not documented, and this request for a reasonable accommodation was not processed.

40. Plaintiff was never asked for any additional information as to that request for accommodation, and she was never notified of any action on it.

41. On or about June 16, 2016, Plaintiff obtained a statement from CRNP Timothy Joan Turner, that she was a patient under his care, and asking that due to work stress and increased anxiety, please allow additional restroom breaks as needed. On or shortly after that date, she provided it to her supervisory management.

42. Plaintiff thereby requested a reasonable accommodation by her employer to allow her to continue to do her job.

43. On information and belief this request was not documented, and this request for a reasonable accommodation was not processed.

44. Plaintiff was never asked for any additional information as to that request for accommodation, and she was never notified of any action on it.

45. As a part of that discriminatory harassment and retaliation, and specifically on or about April 9, 2018, and before and thereafter, supervisory management failed to reasonably protect the confidentiality of Plaintiff's confidential medical and background information, and affirmatively disclosed to unauthorized personnel as part of the discriminatory harassment of her by her supervisory management. This was intentionally done to humiliate her.

46. As a part of that discrimination, discriminatory harassment and retaliation, and beginning on or about April 17, 2018, Plaintiff was wrongfully given a letter of warning, and thereafter, wrongfully received other discipline as part of the discriminatory harassment of her by her supervisory management.

47. On or about August 27, 2018, Plaintiff filed Claim B for disability discrimination, harassment and for retaliation, inter alia.

48. As a part of that discrimination, discriminatory harassment and retaliation, and on or about March 13, 2019, Plaintiff was wrongfully denied a transfer to the Mentone Post Office, as a continuing part of the ongoing discrimination, discriminatory harassment and retaliation against her.

49. On or about August 12, 2019, Plaintiff filed Claim C for disability

discrimination, harassment and retaliation, inter alia.

50. The unwelcome and long term daily harassment Plaintiff was subjected to was sufficiently severe and/or pervasive to alter a term, condition or privilege of her employment.

51. It caused Plaintiff to suffer additional medical problems as a proximate result, including being diagnosed with Post Traumatic Stress Syndrome.

52. It caused Plaintiff to have to stop working before she normally would have.

## IV.  VIOLATION OF AMERICANS WITH DISABILITIES ACT – REASONABLE ACCOMMODATIONS

53.  Paragraphs 1-52 above are incorporated by reference.

54.  The Defendant repeatedly over a long term violated the ADA by failing and refusing to reasonably accommodate the Plaintiff.

55.  As a proximate result the Plaintiff was denied one or more reasonable accommodations she needed, she was caused to urinate on herself, to be embarrassed and humiliated, her medical conditions were worsened, she was caused to suffer Post Traumatic Syndrome, she was caused to lose benefits, compensation, wages and future benefits, compensation and wages, and she was Caused to have to quit working.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff respectfully requests the following relief:

A. That the Court issue an Order declaring the Defendant's acts as described herein to be in violation of the ADA;

B. That the Court enter an Order requiring Defendant to make Plaintiff whole by placing her in the position she would have occupied in the absence of discrimination and retaliation (or front-pay), providing back-pay with interest, and ordering Defendant to pay such compensatory and/or consequential damages, including mental anguish and emotional distress, as a jury may assess;

C. That the Court grant Plaintiff a permanent injunction enjoining Defendant, and its agents, employees, successors, and those acting in concert with Defendant from further violation of Plaintiff's rights under the ADA;

D. That the Court award such other legal and equitable relief as justice requires, including, but not limited to, an award of costs, attorney's fees, expert witness fees, and expenses.

## V. VIOLATION OF AMERICANS WITH DISABILITIES ACT – HARASSMENT

56. Paragraphs 1-55 above are incorporated by reference.

57. Plaintiff's supervisory management, particularly Mary Jo Crabtree and Judy Ling, made her disability worsen and her suffering from it more onerous, by

using their power over her to daily abuse, harass and intimidate her about it, thereby publicly humiliating and embarrassing her, causing her to urinate on herself at work, causing her anxiety and work stress, causing her medical problems/disabilities to worsen, causing her additional suffering, and causing her medical complications, she was caused to suffer Post Traumatic Syndrome, she was caused to lose benefits, compensation, wages and future benefits, compensation and wages, and she was caused to have to quit working.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff respectfully requests the following relief:

A. That the Court issue an Order declaring the Defendant's acts as described herein to be in violation of the ADA;

B. That the Court enter an Order requiring Defendant to make Plaintiff whole by placing her in the position she would have occupied in the absence of discrimination and retaliation (or front-pay), providing back-pay with interest, and ordering Defendant to pay such compensatory and/or consequential damages, including mental anguish and emotional distress, as a jury may assess;
as a jury may assess;

C. That the Court grant Plaintiff a permanent injunction enjoining Defendant, and its agents, employees, successors, and those acting in concert with

Defendant from further violation of Plaintiff's rights under the ADA;

D. That the Court award such other legal and equitable relief as justice requires, including, but not limited to, an award of costs, attorney's fees, expert witness fees, and expenses.

## VI. VIOLATION OF AMERICANS WITH DISABILITIES ACT – RETALIATION

58. Paragraphs 1-57 above are incorporated by reference.

59. After Plaintiff began seeking reasonable accommodations from Defendant, there was a substantial and material change in how she was treated by her supervisory managers, as set out hereinabove in details.

60. Because Plaintiff's requesting reasonable accommodations was a motivating factor and made a difference in how her supervisory management treated her in her employment, Defendant engaged in unlawful retaliation against Plaintiff.

61. The unlawful retaliation against Plaintiff by her supervisory management, particularly Mary Jo Crabtree and Judy Ling, made her disability worsen and her suffering from it more onerous, by using their power over her to daily abuse, harass and intimidate her about it, thereby publicly humiliating and embarrassing her, causing her to urinate on herself at work, causing her anxiety

and work stress, causing her medical problems/disabilities to worsen, causing her additional suffering, and causing her medical complications, she was caused to suffer Post Traumatic Syndrome, she was caused to lose benefits, compensation, wages and future benefits, compensation and wages, and she was caused to have to quit working.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff respectfully requests the following relief:

A.  That the Court issue an Order declaring the Defendant's acts as described herein to be in violation of the ADA;

B.  That the Court enter an Order requiring Defendant to make Plaintiff whole by placing her in the position she would have occupied in the absence of discrimination and retaliation (or front-pay), providing back-pay with interest, and ordering Defendant to pay such compensatory and/or consequential damages, including mental anguish and emotional distress, as a jury may assess;

C.  That the Court grant Plaintiff a permanent injunction enjoining Defendant, and its agents, employees, successors, and those acting in concert with Defendant from further violation of Plaintiff's rights under the ADA;

D.  That the Court award such other legal and equitable relief as justice requires, including, but not limited to, an award of costs, attorney's fees, expert

witness fees, and expenses.

/s/John T. Robertson, IV
**JOHN T. ROBERTSON, IV (ROB031)**
**ATTORNEY FOR PLAINTIFF**


/s/Ralph K. Strawn, Jr.
**RALPH K. STRAWN, JR. (STR002)**
**ATTORNEY FOR PLAINTIFF**

**OF COUNSEL:**
**STRAWN & ROBERTSON, LLC**
2401 Rainbow Drive
Gadsden, AL 35901
(256)459-4548
(256)459-4435 (fax)
jtrobertson@srlawfirm.comcastbiz.net
rstrawn@srlawfirm.comcastbiz.net


**PLAINTIFF DEMANDS TRIAL BY JURY.**

/s/John T. Robertson
**JOHN T. ROBERTSON, IV**
