FILED

2022 Feb-07  PM 01:48
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

**SYLVIA E. CRANE,**

     **Plaintiff,**

**v.**
                                                  **Case No. 4:20-cv-572-CLM**

**LOUIS DEJOY, in his official
capacity as POSTMASTER
GENERAL UNITED STATES
POSTAL SERVICE,**

     **Defendant.**

## MEMORANDUM OPINION

Sylvia Crane sued her former employer, the United States Postal Service, under the Rehabilitation Act for failure to accommodate, hostile work environment, and retaliation. USPS seeks summary judgment on each claim. (Doc. 23). For the reasons below, the Court dismisses Crain's hostile-work-environment claim with prejudice but denies summary judgment on her failure-to-accommodate claim and retaliation claim. So the Court grants in part and denies in part the motion for summary judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

This case arises from Sylvia Crane's efforts to obtain workplace accommodations for her urinary-urgency condition, anxiety, and depression, which cause her to need use the restroom "[a] couple of times an hour." (Doc. 24-1 at 86).

From 2007 until 2019, Crane worked for USPS in the Fort Payne post office. (*Id.* at 23, 26). She was a "Sale, Services/Distribution Associate." (Doc. 26 at 2 ¶ 1). In that role, she helped retail customers, maintained inventory, sorted mail, helped with dispatch, and sometimes unloaded mail from trucks. (Docs. 24-1 at 40, 24-3).

Crane submitted several accommodation requests to use the restroom whenever she needed. (Doc. 26 at 2 ¶ 6, 32 at 8). In 2010, Crane and her employer reached an agreement: Crane would "have access to the restroom as needed," but she must "notify [her] supervisor when the need arises to leave the work area to go to the restroom." (Doc. 24-2 at 89). Crane admitted in her deposition that USPS never outright prohibited her from using the restroom. (Doc. 24-1 at 74 ("They never turned me down. They — they would just harass me for having to go.")).

Still, Crane believes that USPS didn't reasonably accommodate her disability, and otherwise acted unlawfully, in two ways. First, she says that nothing short of allowing her to use the restroom as needed—without requiring her to wait for a supervisor's permission—would have reasonably accommodated her disability. (*Id.* at 77; *see also* doc. 29-5 at 1). And she testified that her supervisors sometimes made

her wait before allowing her to go to the restroom, which she said sometimes caused her to urinate on herself. (*See* docs. 24-1 at 77, 29-5 at 1). Second, Crane claims that her supervisors and management would "harass," "intimidate," and "make fun of" her for needing to use the restroom. (Doc. 24-1 at 74, 77).[1] She also testified that her supervisors and coworkers would sometimes enter the bathroom either to give directions or to ask questions. (*Id.* at 74, 77–79).

This opinion and order resolves USPS's motion for summary judgment.

## STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1987). And a fact is material if its resolution "might affect the outcome of the suit." *Id.* "Conclusory allegations and speculation are insufficient to create a genuine issue of material fact." *Glasscox v. City of Argo*, 903 F.3d 1207, 1213 (11th Cir. 2018). At this stage, "[a]ll evidence and factual inferences are viewed in the light most favorable to the non-moving party, and all reasonable doubts about the facts are resolved in favor of the non-moving party." *Hardigree v. Lofton*, 992 F.3d 1216, 1223 (11th Cir. 2021).

---

[1] The only two examples that Crane could recall in her deposition were that her supervisors would ask "what took you so long" or say "she's going to the bathroom again." (Doc. 24-1 at 92).

## DISCUSSION

Crane sued USPS for failure to accommodate, hostile work environment, and retaliation under the Rehabilitation Act. Section 504 of the Rehabilitation Act prohibits federal agencies from discriminating against otherwise-qualified individuals "solely by reason of her or his disability." 29 U.S.C. § 794(a).

## I.      Failure to accommodate

To prevail on a failure-to-accommodate claim, the plaintiff must prove that she (1) has a disability, (2) is otherwise qualified for the position, and (3) was subjected to unlawful discrimination "solely by reason of her or his disability." *Palmer v. McDonald*, 624 F. App'x 699, 705 (11th Cir. 2015). "An employer unlawfully discriminates against an otherwise qualified person with a disability when it fails to provide a reasonable accommodation for the disability, unless doing so would impose an undue hardship on the employer." *Boyle v. City of Pell City*, 866 F.3d 1280, 1289 (11th Cir. 2017).

USPS doesn't dispute that Crane had a disability and was otherwise qualified for her position. (Doc. 26 at 11–12). Rather, it argues that Crane "provided insufficient evidence that the USPS failed to accommodate her disability," (*id.* at 11), and points out that Crane "was never denied the ability to use the restroom whenever she needed." (*Id.* at 12). Crane, by contrast, argues that USPS never provided Crane's "requested reasonable accommodations." (Doc. 32 at 13). And she

cites her affidavit, in which she stated: "the reasonable accommodation I needed was to be able to immediately go whenever the need was urgent." (Doc. 29-5 at 1). And she argues that the accommodation USPS provided—allowing her to use the restroom only after talking to her supervisor, coupled with her supervisors' delaying and "harass[ing]" her—was not reasonable. (Doc. 32 at 13–14).

"A reasonable accommodation is one that would allow the employee to perform the essential functions of the job." *Porterfield v. SSA*, No. 20-10538, 2021 WL 3856035, at *6 (11th Cir. Aug. 30, 2021). "[T]he accommodation need only be reasonable, not in the employee's desired manner." *Kirkland v. City of Tallahassee*, 856 F. App'x 219, 223 (11th Cir. 2021). "[T]he use of the word 'reasonable' as an adjective for the word 'accommodate' connotes that an employer is not required to accommodate an employee in any manner in which that employee desires." *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997). And "the burden of identifying an accommodation that would allow a qualified individual to perform the job rests with that individual, as does the ultimate burden of persuasion with respect to demonstrating that such an accommodation is reasonable." *Id.* at 1286.

The Court holds that Crane has narrowly identified a genuine dispute of material fact as to whether USPS "fail[ed] to provide a reasonable accommodation for the disability." *Boyle*, 866 F.3d at 1289. Again, Crane's disability is that she has

to go to the restroom "quickly," or otherwise she could "urinate on [herself]" (Doc. 24-1 at 65). According to Crane, although her supervisors never outright denied her request to use the restroom, they sometimes waited so long to approve her request that she urinated on herself. (Doc. 24-1 at 74, 77). Viewing the facts in the light most favorable to Crane, a reasonable jury could find that USPS didn't reasonably accommodate Crane's specific disability.

USPS's arguments to the contrary fall short. First, it argues that Crane "was never denied the ability to use the restroom whenever she needed." (Doc. 26 at 12). That's true in theory. But in practice, USPS's accommodation led to Crane self-urinating on the job. And USPS doesn't address the practical implications of its chosen method of accommodating Crane's disability.

Second, USPS argues that Crane's claim fails because she "primarily relies on her own statements and assertions to support her case and such conclusory allegations are insufficient without supporting evidence." (Doc. 32 at 3). But USPS doesn't appear to dispute her assertions that her supervisors delayed her to the point of self-urination. Although reliance on her own testimony alone might provide a *weak* case, Crane's testimony is neither impermissibly conclusory nor speculative. And if a reasonable juror believes Crane, that juror could find for Crane. So Court denies summary judgment on the failure-to-accommodate claim.

## II.    Hostile work environment

To prevail on a hostile-work-environment claim, Crane must prove that her "workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1248 (11th Cir. 2014). Eleventh Circuit precedent requires Crane to prove five elements:

> (1) that he is a member of a protected class; (2) that he was subjected to unwelcome [disability] harassment; (3) that the harassment was based on his [disability]; (4) that the harassment was severe or pervasive enough to alter the terms and conditions of his employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for the environment under a theory of vicarious or direct liability.

*Id.* at 1248–49.[2]

To satisfy the "severe or pervasive" element, Crane must show that her environment was subjectively and objectively hostile. *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999) (en banc). Objective hostility turns on four factors: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and

---

[2] The Eleventh Circuit has not expressly recognized a hostile-work-environment claim under the Rehabilitation Act or ADA. *See Gilliard v. Ga. Dep't of Corr.*, 500 F. App'x 860, 868 (11th Cir. 2012). But it has assumed the claim exists under the ADA. *See Stewart v. Jones Util. & Contracting Co., Inc.*, 806 F. App'x 738, 741 (11th Cir. 2020). The Court assumes that Crane can bring the claim under the Rehabilitation Act, too, because the remedies, procedures, and rights available under the Rehabilitation Act parallel those available under the ADA. *See Boyle*, 866 F.3d at 1288 n.5.

(4) whether the conduct unreasonably interferes with the employee's job performance." *Id.* These factors guide the inquiry but are "not subject to mathematical precision." *Bryant v. Jones*, 575 F.3d 1281, 1297 (11th Cir. 2009). Rather, the Court views the evidence "cumulatively and in the totality of the circumstances." *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 808 (11th Cir. 2010) (en banc).

Crane testified that:

- "[I]t was very frustrating" that her supervisors and coworkers sometimes entered the restroom to give directions or ask questions. (Doc. 24-1 at 74).

- Her supervisors sometimes made her wait before leaving her workspace. (*Id.* at 77).

- Her supervisors and coworkers would "make fun of" her when she went to the restroom. (*Id.* at 92).

- Her supervisors would yell at her and speak to her "with harsh attitudes, tones[,] and words." (*Id.*). And this sometimes occurred in front of customers or coworkers. (*Id.* at 78). But the only examples she could recall were that they would say "she's going to the bathroom again" or ask "what took you so long?" (*Id.* at 92).

- The Postmaster, Mary Jo Crabtree, once told her "that she wanted to put a shock collar on [her] to wear at the post office." (*Id.* at 116).

- Her bathroom issues became "a topic on the workroom floor." (*Id.* at 82). And "all the employees . . . would talk about it and make comments." (*Id.* at 83).

- Someone hung a sign in the bathroom that said, "Psst . . . . your crazy is showing, you might want to tuck that back in." (Doc. 29-3). And her supervisors refused to take the sign down. (Doc. 24-1 at 92–93).

- Judy Ling, her direct supervisor, once "dove across a desk" to "jerk papers out of [Crane's] hand." (*Id.* at 116).

"[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher v. Boca Raton*, 524 U.S. 775, 788 (1998) (citation omitted). With that context, Crane's evidence fails to be "severe or pervasive enough to alter terms and conditions of [her] employment and create a discriminatorily abusive work environment." *Adams*, 754 F.3d 1248.

1. <u>Frequency</u>: Although her supervisors and coworkers would "make fun of her" with some frequency, "simple teasing" is not enough. *Faragher*, 524 U.S. at 788. And her other allegations lack the frequency needed to favor Crane.

2. <u>Severity</u>: The evidence doesn't meet the threshold of severity either. In *Barrow v. Georgia Pacific Corporation*, for example, an African-American employee testified that: (1) his co-workers displayed Confederate flags, wrote "KKK" in the bathroom, hung a noose on another employee's locker; and (2) his supervisor "repeatedly called him 'boy,'" called him "ni—er" three times in one year, and "told him two or three times that he was going to kick [the employee's] 'black ass.'" 144 F. App'x 54, 57 (11th Cir. 2005). The court held that these "allegations do not meet the standard of severe and pervasive harassment" necessary to support a hostile-work-environment claim. *Id.* at 58. If those allegations fell short, then Crane's allegations fall short too.

3. <u>Physically threatening or humiliating</u>: First, Crane has not offered sufficient evidence that her work environment was physically threatening. Second, the Court finds that a jury could narrowly find that her work environment was humiliating. On one hand, these facts support a finding of humiliation: (1) urinating herself when she didn't make it to the bathroom in time; (2) supervisors and coworkers entering the restroom to give directions or ask questions; (3) her being "made fun of," and spoken to harshly, sometimes in front of customers; (4) her disability being a subject of gossip. And, indeed, she testified that her experience "was very humiliating." (*Id.* at 81). But on the other hand, "mere offensive utterance[s]" are not enough. *Mendoza*, 195 F.3d at 1246. Relying on the other allegations, though, a jury could find that the conduct was humiliating. So this factor, in the Court's view, weighs slightly in favor of Crane.

4. <u>Unreasonable interference with job performance</u>: Crane testified that she often had to take time off when she "was stressed and getting harassed." (Doc. 24-1 at 95). But, other than that, she didn't explain how her alleged mistreatment adversely affected her performance. And she also testified that her job performance was "good." (*Id.* at 32). The Court finds that this factor also slightly favors Crane.

On balance, and considering "the totality of the circumstances," *Reeves*, 594 F.3d at 808, the Court holds that Crane's evidence is not enough to support a jury finding that her alleged mistreatment was "sufficiently severe or pervasive to alter

the conditions of [her] employment and create an abusive working environment,"
*Mendoza*, 195 F.3d at 1246. Her allegations amount to "teasing, offhand comments,
and isolated incidents" that fall short of the mark. *Faragher*, 524 U.S. at 788 (citation
omitted). So she cannot satisfy the elements of a prima facie hostile-work-
environment claim. And neither does her evidence "demonstrate a 'convincing
mosaic' of circumstantial evidence that warrants an inference of intentional
discrimination." *Lewis v. City of Union City*, 918 F.3d 1213, 1220 n.6 (11th Cir.
2019) (en banc). So the Court grants summary judgment to USPS on this claim.

## III. Retaliation

Under the Rehabilitation Act, "[a]n employer may not retaliate against an
employee for opposing any employment practice made unlawful by the ADA."
*Frazier v. Dep't of Health & Hum. Servs.*, 710 F. App'x 864, 869 (11th Cir. 2017)
(citing 42 U.S.C. § 12203(a); 29 U.S.C. § 791(f) (incorporating ADA standards into
the Rehabilitation Act); *Hosanna-Tabor Evangelical Lutheran Church & Sch. v.
EEOC*, 565 U.S. 171, 179–80 (2012)). The Court applies "the same framework [as]
for retaliation claims arising under Title VII." *Id.* That framework has three steps. In
Step One, the plaintiff must "show (1) that she engaged in statutorily protected
activity, (2) that she suffered an adverse action, and (3) that the adverse action was
causally related to the protected activity." *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967
F.3d 1121, 1134 (11th Cir. 2020) (en banc) (quotation marks omitted). If the plaintiff

does so, then in Step Two, the burden "shifts to the employer to rebut the presumption [of retaliation] by articulating a legitimate, non-discriminatory reason for the employment action." *Id.* at 1135. And if the employer makes that showing, then in Step Three, the plaintiff must show "that the 'proffered reason was merely a pretext to mask [retaliatory actions].'" *Id.* (alteration in original).

The retaliatory action must be "mistreatment" that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 861 (11th Cir. 2020) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). And retaliatory intent must be "the but-for cause of the challenged employment action." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013).

1. Prima facie case: A reasonable juror could find that Crane made a prima-facie case of retaliation. First, her efforts to obtain her requested accommodations are protected activity under the Rehabilitation Act. *See Monroe v. Fla. Dep't of Corr.*, 793 F. App'x 924, 928 (11th Cir. 2019) (explaining that an employee engages in protected activity if she "had a good faith, reasonable belief that the activity was protected by the statute"). Although Crane agreed "that it is appropriate for employees to notify his/her supervisor when the need arises to leave the work area to go to the restroom," (doc. 24-2 at 89), there is no indication that Crane lacked a good-faith belief that she was entitled to further accommodation—*i.e.,* the ability to

immediately go to the restroom when needed. Second, a reasonable juror could find that Crane's coworkers actions "well might have dissuaded a reasonable worker from" pursuing accommodations in the future and contesting inadequate accommodations. *See Burlington Northern*, 548 U.S. at 68.[3] And third, a reasonable juror could find that Crane's mistreatment "was causally related to" her efforts to obtain her requested accommodation and her contesting her allegedly inadequate accommodations. *Gogel*, 967 F.3d at 1134.

2. <u>Nonretaliatory reason</u>: USPS says that the workplace discipline and negative interactions that Crane faced "arose out of her difficulty in being present at work and following the rules in reporting absences," not her requests for an accommodation. (Doc. 26. at 16–18). This is a nonretaliatory reason for the adverse actions, so the Court moves on to Step Three.

3. <u>Pretext</u>: It's one thing to discipline or chastise an employee because she fails to follow the rules. It's quite another to mock her and yell at her. A reasonable juror who believes Crane's testimony that coworkers mocked and yelled at her could believe could "that the 'proffered reason was merely a pretext to mask [retaliatory

---

[3] The standard for actionable misconduct in a retaliation claim is less demanding than the standard in a hostile work environment claim. A hostile-work-environment claim requires mistreatment that is "sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Mendoza*, 195 F.3d at 1246. But a retaliation claim only requires mistreatment that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Monoghan*, 955 F.3d at 861. And the Eleventh Circuit has reversed or vacated decisions that applied the "severe or pervasive" standard in the context of retaliation claims. *See Babb v. Dep't of Vet. Affairs*, 992 F.3d 1193, 1209 (11th Cir. 2021); *Monoghan*, 955 F.3d at 863. So it makes sense that Crane's evidence would fall short of the hostile-work-environment standard but satisfy the retaliation standard.

actions].'" *Gogel*, 967 F.3d at 1135.

USPS again argues that Crane's claim fails because she "primarily relies on her own statements and assertions to support her case and such conclusory allegations are insufficient without supporting evidence." (Doc. 32 at 3). But it does not explain how her testimony is "conclusory," does not factually dispute the existence of the facts upon which Crane relies, and does not explain how those facts are . So the Court rejects this argument and USPS's request to dismiss Crane's retaliation claim.

* * *

For the reasons above, the Court **GRANTS IN PART** and **DENIES IN PART** USPS's motion for summary judgment. (Doc. 23). The Court denies summary judgment on her failure-to-accommodate claim and retaliation claim. The Court will enter a separate order that **DISMISSES WITH PREJUDICE** Crane's hostile-work-environment claim.

**DONE** and **ORDERED** on February 7, 2022.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE